UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF MARIPOSA CREEK, an unincorporated association, and SARAH WINDSOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MARIPOSA PUBLIC UTILITIES DISTRICT, a public utility district,<br><br>Defendant. | Case No. 1:15-cv-00583-EPG<br><br>**ORDER AFTER HEARING RE: DEFENDANT MARIPOSA PUBLIC UTILITIES DISTRICT'S SECOND MOTION TO DISMISS**<br><br>(ECF No. 23) |

## I.     INTRODUCTION

Defendant Mariposa Public Utilities District ("Defendant" or the "District") has moved to dismiss Plaintiffs' Complaint alleging violations of the Clean Water Act on the ground that Plaintiffs have failed to join the California Regional Water Quality Board (the "Regional Water Board"), which Defendant claims is an indispensable party in this action. Because the Regional Water Board is protected by sovereign immunity and is thus immune from suit, Defendant argues, the entire Complaint must be dismissed. The Regional Water Board, however, does not constitute an indispensable—or even a necessary—party to this action. Defendant's Motion must thus be DENIED.

The Court observes that much of Defendant's Motion is premised on an interpretation of the Court's earlier order on Defendant's first motion to dismiss (ECF No. 22) and often calls into question the underpinnings of that earlier decision, but does not ask that the decision be reconsidered. The Court emphasizes that this Order decides only Defendant's second motion to dismiss based on Federal Rule of Civil Procedure 12(b)(7) and does not reconsider or revisit arguments advanced in Defendant's first motion to dismiss (ECF No. 6) or the order thereon.

## II.    BACKGROUND

As the Court explained in its order denying the first motion to dismiss (ECF No. 22), this case revolves around the alleged discharge of pollutants by the District into Mariposa Creek. The District, a public utility district, operates a water treatment facility in Mariposa, California. As a byproduct of the water treatment process, the facility releases dichlorobromomethane ("DCBM") and copper into the creek. Under the terms of the federal Clean Water Act, the Regional Water Board issues National Pollutant Discharge Elimination System permits that regulate the amount of pollutants a facility can discharge:

> Pursuant to the terms of the federal Clean Water Act, its implementing regulations, and the California Water Code, the California Regional Water Quality Board, Central Valley Region (the "Regional Water Board") issued a National Pollutant Discharge Elimination System permit to the District on December 6, 2007 (the "2007 Permit"). The 2007 Permit, which took effect on January 25, 2008, limited the amount of daily, weekly, and monthly DCBM and copper emissions that the facility could discharge.[1] The 2007 Permit informed the District that any noncompliance (*e.g.*, discharge over the specified limitations) would be a "violation of the Clean Water Act and the California Water Code and is grounds for enforcement action, for permit termination, revocation and reissuance, or modification, or denial of a permit renewal application." (Defendant's Request for Judicial Notice, Exh. A, pg. 42, ECF No. 8-1.)[2] It also gave the Regional Water Board the authority to enforce the terms of the Permit under sections 13385, 13386, and 13387 of the California Water Code. *Id.* at 50.

(ECF No. 22.)

After issuing the 2007 Permit, the Regional Water Board issued a Time Schedule Order (the "2011 TSO"):

> On July 13, 2011, the Regional Water Board issued a Time Schedule Order (the "2011 TSO") to the District. The 2011 TSO, which was issued under California

---

[1] For example, the maximum daily final limitation for DCBM was 1.1 µg/L.

[2] Exhibit page numbers will be identified by the CM/ECF generated page number on the upper right hand corner of each document.

> Water Code § 13385, found that the District was "unable to consistently comply with the final effluent limitations for dichlorobromomethane contained in [the 2007 Permit]." (Defendant's Request for Judicial Notice, Exh. B, pg. 6, ECF No. 8-2.) The 2011 TSO then set a schedule designed to bring the District into compliance with the DCBM limitations in the 2007 Permit. Among other things, it required the District to begin the implementation of their upgrade plan by August 1, 2011 and submit semi-annual progress reports to the Regional Water Board. It also provided an "interim effluent limitation" for DCBM to be effective from July 13, 2011 to May 17, 2015. The interim maximum daily limitation, for instance, was set at 9.4 μg/L. Finally, the 2011 TSO noted that the "[i]ssuance of this Order does not preclude the Central Valley Water Board from taking additional enforcement actions against the Discharger. If compliance is not achieved by the full compliance date, the discharge[r] will be subject to mandatory minimum penalties for violations of the final effluent limitations for dichlorobromomethane." *Id.* at 10.

*Id.*

After the District failed to comply with the terms of the 2007 Permit, even after the issuance of the 2011 TSO, the Regional Water Board proceeded to issue an Administrative Complaint which proposed (but did not assess) penalties on the District:

> On September 19, 2013, the Regional Water Board served a Notice of Violation on the District. The Notice stated that the Regional Water Board was considering issuing an Administrative Civil Liability Complaint under California Water Code § 13385 for violations of the 2007 Permit between February 2008 and July 2013. The Notice described 30 separate violations subject to mandatory minimum penalties, amounting to $90,000 in penalties. The violations were primarily composed of DCBM violations and included one copper violation. On October 7, 2013, the District responded to the Notice and agreed with the identified violations.
>
> On December 30, 2013, the Regional Water Board issued an Administrative Civil Liability Complaint for violations to the 2007 Permit between February 1, 2008 and July 30, 2013 (the "Administrative Complaint"). The Regional Water Board assessed $87,000 in penalties and provided the District the option of engaging in a "compliance project," rather than paying the full amount in penalties. The Administrative Complaint also explained that the District was a "publicly owned treatment works serving a small community with a financial hardship." *Id.* at 18. The Administrative Complaint set a hearing for March 27 and 28, 2014 and explained that, if the matter proceeded to a hearing, the Regional Water Board could amend the proposed amount of liability according to evidence presented at the hearing. *Id.* at 19. The District waived its right to a hearing on the Administrative Complaint and elected to enter into settlement discussions. The results of those discussions were unclear at the time this case was filed; the Regional Water Board has not issued a final order on the Administrative Complaint or opened a period for public review and comment on that order.

*Id.*

Plaintiffs provided timely notice of their intent to sue the District to the Regional Water Board, but the Regional Water Board did not attempt to initiate its own enforcement action.

3

Plaintiffs then filed suit on April 15, 2015. (ECF No. 1.) The Regional Water Board has not attempted to intervene in the suit.

Plaintiffs allege that neither the EPA nor the State of California have initiated any action against the District for violations of the Clean Water Act after July 5, 2011 (the date of the last DCBM violation identified in the Administrative Complaint). Plaintiffs further allege that even the violations in the period covered by the Administrative Complaint have not been "diligently prosecuted" because no final order has been issued and no penalties have been assessed or paid. Based on this lack of enforcement, Plaintiffs filed a citizen suit under 33 U.S.C. § 1365. Plaintiffs request declaratory relief in the form of an order finding that the District has violated the 2007 Permit from May 18, 2010 to March 27, 2014 and the 2014 Permit since March 28, 2014. They also request injunctive relief enjoining the District from violating the limitations set in the 2014 Permit and requiring the District to repair any injury caused to Mariposa Creek as a result of their violations. Finally, Plaintiffs request civil penalties against the District and an award of costs, including attorney fees.

Defendant previously moved to dismiss the Complaint, asserting that the Regional Water Board was diligently prosecuting the District via the 2011 TSO and the Administrative Complaint, thus precluding Plaintiffs from asserting their claims. Defendant also argued that the 2011 TSO superseded the requirements in the 2007 Permit. In the order denying the motion to dismiss, the Court found, among other things, that: (1) the 2011 TSO and the Administrative Complaint did not constitute "diligent prosecution" under the Clean Water Act; and (2) the limitations set in the TSO did not supersede the final limitations set by the 2007 Permit. (ECF No. 22.) Again, the Court does not reconsider those decisions here and treats them as Law of the Case.

Defendant has now moved to dismiss Plaintiffs' Complaint a second time under Federal Rule of Civil Procedure 12(b)(7), claiming that the Court's earlier order rendered the 2011 TSO and the Administrative Complaint invalid. Because the Regional Water Board is the only party that can defend the validity of its orders, Defendant claims, the Regional Water Board is an indispensable party that must be joined to proceed. As a state agency, however, the Regional

4

Water Board is protected by sovereign immunity and cannot be joined. Thus, Defendants argues, the entire case must be dismissed.

On November 13, 2015, the Court heard oral argument on the Motion. Both parties appeared through counsel. After the hearing, both parties submitted supplemental briefing on the possibility of the imposition of duplicate penalties on Defendant under Federal Rule of Civil Procedure 19. After reviewing the arguments and for the reasons set forth below and on the record at the hearing, the Court determines that the Motion to Dismiss will be DENIED.

## III.   DISCUSSION

### A. Legal Standards for a Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party

Federal Rule of Civil Procedure 12(b)(7) allows a party to move to dismiss a case for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19(a) reads, in part:

> (1) **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"Rule 19 imposes a three-step inquiry: (1) Is the absent party necessary (*i.e.*, required to be joined if feasible) under Rule 19(a)?; (2) If so, is it feasible to order that absent party to be joined?; and (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Camacho v. Major League Baseball*, 297 F.R.D. 457, 460 (S.D. Cal. 2013), *citing River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). "There is no precise formula for determining whether a particular non-party is necessary to an action." *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). The analysis asks first "whether the district court could award complete relief to the parties present without joining the non-party." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011). "Alternatively, we ask whether the non-party has a 'legally protected interest' in this action that would be 'impaired or impeded by adjudicating the

case without it.'" *Id.* Defendant "has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

### B. The Regional Water Board Is Not a Necessary Party

As detailed at the hearing, the Court finds that the Regional Water Board is not a necessary party to this litigation. **First**, applicable (and binding) case law establishes that "federal and state agencies administering federal environmental laws are not necessary parties in citizen suits to enforce the federal environmental laws." *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Resources, Inc.*, 299 F.3d 1007, 1014 (9th Cir. 2002); *see also Sierra Club v. Young Life Campaign, Inc.*, 176 F.Supp.2d 1070, 1078 (D. Colo. 2001) ("it has long been settled that federal and state agencies that administer federal environmental programs are not necessary, let alone indispensable, parties to citizen suits to enforce permitting and other federal environmental requirements against alleged violators"), *citing Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2d Cir. 1976); *Metro. Wash. Coalition for Clean Air v. Dist. of Columbia*, 511 F.2d 809, 914-15 (D.C. Cir. 1975); *Student Pub. Interest Research Group v. Monsanto Co.*, 600 F.Supp. 1479, 1484 (D.N.J. 1985). Nor is Defendant able to point to case law to the contrary. Although Defendant contends that *California Dump Truck Owners Ass'n v. Nichols*, 924 F.Supp.2d 1126 (E.D. Cal. 2012) is a "virtually identical" case to this one, the plaintiff in that case sought to directly challenge the enforcement of the state regulation in question, something that Plaintiffs in this case plainly do not attempt to do.

**Second**, the litigation can afford complete relief to Plaintiffs without the addition of the Regional Water Board. Plaintiffs request the assessment of civil penalties and attorney fees against the District, as well as declaratory and injunctive relief as against the District. (Complaint 14-15, ECF No. 1.) Were Plaintiffs to prevail in their suit, none of their relief would need to come from the Regional Water Board. In other words, Plaintiffs can obtain complete relief among the existing parties.

**Third**, the Regional Water Board does not claim a legally protected interest in the action, nor will "disposing of the action" in the Regional Water Board's absence impair or impede its ability to protect such an interest. Plaintiff does not seek any relief from the Regional Water

6

Board. Moreover, Plaintiffs and the Regional Board have the same overarching interest in enforcement of the Clean Water Act. Nor does the Regional Water Board have a legally protected interest in being the sole enforcer of that Act, especially when not doing so diligently. Indeed, the Act expressly allows for citizen enforcement under these circumstances, as described in the Court's order on the first motion to dismiss.

It is again worth noting that before the citizen suit was filed, the Regional Water Board had multiple opportunities to pursue an independent action against the District, but declined to do so, even after receiving explicit notice from Plaintiffs that a citizen suit was going to be filed. It has also declined to intervene in the current litigation, despite informing both parties at various points that it is aware of this litigation. The Regional Water Board has had opportunities to assert any interest it has in this litigation but has declined to do so.

Nor did the Court's previous order denying Defendant's first motion to dismiss create some new legally protected interest by stating that the 2011 TSO did not supersede the final limitations set by the 2007 Permit and did not constitute diligent prosecution of permit violations. (ECF No. 22.) In the current motion to dismiss, Defendant claims that the Court's prior order rendered the 2011 TSO "invalid," and asks that the case be dismissed because the Regional Board cannot now be joined to adequately defend those TSOs. But the Court merely read the express terms of the 2011 TSO to mean that *the Regional Water Board* would not pursue an enforcement action at the time the 2011 TSO was written. The Court's order did not alter that arrangement. But the terms of the TSOs do not (and could not) claim that citizen plaintiffs will also refrain from enforcing the permits, as such plaintiffs are empowered to do by the Clean Water Act. Nor, as the Court held in the earlier order, do the TSOs constitute new Permits for higher amounts of pollutants, which may have prevented citizen suits on the earlier permits. *See, e.g., Citizens for a Better Env't v. Union Oil Co.*, 83 F.3d 1111, 1120 (9th Cir. 1996) (finding that consent order did not modify NPDES permit and allowing citizen suit to proceed). In other words, the Regional Water Board does not have a legally protected interest in preventing citizen plaintiffs from going further in their enforcement of permits than the Regional Water Board has chosen to do.

Thus, holding that issuance of TSOs with an agreement that the Regional Board will not enforce certain violations does not constitute "diligent prosecution" under the Clean Water Act did not give rise to a legally protected interest of the Regional Water Board, and certainly does not justify dismissing the suit in the absence of the Regional Water Board joining this case.

**Fourth**, a failure to join the Regional Water Board does not subject Defendant to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19. Even assuming that the 2011 TSO imposed a higher limit for effluent discharges than the 2007 Permit, a requirement that Defendant comply with the limitations set in the 2007 Permit does not create an "inconsistent" obligation with the 2011 TSO because Defendant could comply with both sets of limitations by complying with the more restrictive 2007 Permit limitations.

This is also not a situation where Defendant risks paying twice for the same violations. The Court is not aware of any circumstance where a defendant has had to pay double penalties for the same Clean Water Act violations as part of both a citizen suit and state enforcement action. It does not appear that double penalties would be permitted under the Act, which imposes only a single civil penalty for a single violation, mitigating any risk of duplicative penalties. *Id.* ("any person who violates any order issued by the Administrator under subsection (a) of this section . . . shall be subject to *a* civil penalty not to exceed $25,000 per day *for each violation*") (emphasis added). Notably, violations will be paid to the U.S. Treasury—not to Plaintiffs directly. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987), *citing Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 449 (D. Md. 1985) ("Although the statute provides that a citizen sues 'on his own behalf,' any penalties recovered from such an action are paid into the United States Treasury . . . Any benefit from the lawsuit, whether injunctive or monetary, inures to the public or to the United States"). Thus, this Court finds no risk that Defendant will have to pay twice if the Regional Water Board does not join this lawsuit.[3]

---

[3] The Court also notes that some Ninth Circuit authority suggests that public enforcement agencies may share privity of interests with private parties seeking to enforce laws in the context of a *res judicata* or collateral estoppel defense. *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980) ("In some contexts, the relationship between governmental authorities as public enforcers of ordinances and private parties suing for enforcement as private attorneys general is close enough to preclude relitigation"). Thus, even if Defendant is penalized in the current litigation, it is unlikely that it would be left without any defense if another party later sought penalties for the same violations.

Moreover, the Court also maintains "significant discretion in crafting the relief to be granted in this action." *Ohio Valley Envtl. Coalition, Inc. v. Maple Coal Co.*, 808 F.Supp.2d 868, 889 (S.D. W.Va. 2011). Should the Regional Water Board assess penalties against Defendant, the Court is capable of crafting a remedy to avoid any double penalties. The text of the Clean Water Act even explicitly allows courts discretion in deciding applicable penalties. 33 U.S.C. § 1319(d) ("In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violation, and such other matters as justice may require").

Defendant's argument amounts to stating again that assessing penalties based on the official permits is inconsistent with Defendant's expectation that it would only be held to the requirements in the TSOs. As discussed in the Court's previous order, the TSOs did not constitute new permits as defined by the Clean Water Act and did not prevent citizens from enforcing the actual permits. To the extent there is any inconsistency here, it lies with the difference in the willingness between the Regional Water Board and citizen plaintiffs to enforce the official Permits in full. That inconsistency of enforcement is not the same as risk of inconsistent judgments or double penalties for purposes of evaluating whether a party is indispensable under Rule 19.

*Finally*, even if the Regional Water Board were a necessary party and joinder were not feasible, the Court does not believe that equitable factors favor the dismissal of Plaintiffs' Complaint. Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed"). The policy purposes of citizen suits under the Clean Water Act would be destroyed if citizen suits like this one were dismissed whenever a state agency failed to both diligently prosecute its own enforcement action or join the lawsuit. After all, as discussed in the Court's prior order, the threshold step of a citizen suit is a demonstration that the applicable administrative agency is either unable or unwilling to diligently prosecute an action for the alleged violations. It would thus make little sense to dismiss that same

citizen suit simply because the administrative agency is either unable or unwilling to participate in the litigation later on.

The Court thus finds that the Regional Water Board is not a necessary or required party to this action and thus cannot be an indispensable party for the purposes of Rule 19.

## IV.     ORDER

For the reasons set forth above, Defendant's Second Motion to Dismiss Plaintiffs' Complaint (ECF No. 23) is DENIED.

IT IS SO ORDERED.

Dated:   **November 30, 2015**                       /s/ Erica P. Grosjean
                                                     UNITED STATES MAGISTRATE JUDGE