UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRIENDS OF MARIPOSA CREEK, an unincorporated association, and SARAH WINDSOR, an individual,

Plaintiffs,

v.

MARIPOSA PUBLIC UTILITIES DISTRICT, a public utility district,

Defendant.

**Case No. 1:15-cv-00583-EPG**

**ORDER RE: DEFENDANT'S MOTION FOR RECONSIDERATION OR TO CERTIFY THE ORDER GRANTING PARTIAL SUMMARY JUDGMENT AS IMMEDIATELY APPEALABLE**

(ECF No. 54)

## I. INTRODUCTION

Defendant Mariposa Public Utilities District ("Defendant" or the "District") has moved for reconsideration of the Court's Order of April 19, 2016, granting Plaintiff's motion for partial summary judgment (ECF No. 51). In that Order, the Court found that the undisputed facts of the case demonstrated: (1) Defendant's operations were governed by two National Pollutant Discharge Elimination System ("NPDES") permits; and (2) Defendant discharged effluent emissions in excess of the limitations set in those permits. Defendant now requests that the Court vacate the Order, amend the Order, or certify the Order for immediate appeal under 28 U.S.C. §

1292(b) or Rule 54(b) of the Federal Rules of Civil Procedure. Because the Court finds inadequate grounds for Defendant's requests, the Motion is DENIED.

## II. BACKGROUND

This is an action under the Clean Water Act alleging the discharge of pollutants by a water treatment facility in violation of 33 U.S.C. § 1365. The Facility, which is operated by Defendant, is subject to various discharge limitations listed in permits issued by the California Regional Water Quality Board, Central Valley Region (the "Regional Water Board"). In particular, the permits limit the amount of dichlorobromomethane ("DCBM") and copper the Facility can discharge. Plaintiffs allege that Defendant has discharged DCBM and copper in excess of these limits.

On February 26, 2016, Plaintiffs filed a motion for partial summary judgment as to the issue of liability. (ECF No. 37.) Plaintiffs asked the Court to determine, based on the undisputed facts in the case, that the District violated the Clean Water Act. Plaintiffs did not ask the Court to determine the amount of penalties to be assessed based on these violations. A trial on the amount of penalties is currently set for February 14, 2017.

On April 19, 2016, the Court issued an Order granting the motion for partial summary judgment. In particular, the Court found that the undisputed facts of the case showed: (1) Plaintiffs had adequately demonstrated standing to pursue this litigation; (2) the District's discharges into Mariposa Creek were governed by NPDES Permit Nos. R5-2007-0171 (the "2007 Permit") and R5-2014-0042 (the "2014 Permit"); (3) the 2007 and 2014 Permits set specific effluent limitations governing the District's discharges; (4) the two time scheduling orders (the "TSOs") issued by the Regional Water Board were not permits (and thus further discovery on them was unneeded); (5) Defendant discharged pollutants in excess of the effluent limitations set by the Permits; and (6) no actions taken by the Regional Water Board had stripped the Court of its jurisdiction.

On May 16, 2016, Defendant filed a motion seeking reconsideration of the April 19, 2016 Order. After reviewing the papers submitted in support and opposition of the Motion, the Court determined that this matter is suitable for decision without oral argument pursuant to Local Rule

230(g). Based on the pleadings and for the reasons set forth below, Defendant's Motion is DENIED.

## III. LEGAL STANDARDS

"It is a basic principle of federal practice that 'courts generally . . . refuse to reopen what has been decided.'" *Magnesystems, Inc. v. Nikken, Inc.*, 933 F.Supp. 944, 948 (C.D. Cal. 1996), *quoting Messinger v. Anderson*, 225 U.S. 436, 444 (1912). As a result, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Reconsideration is not "granted absent highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001); *see also Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) ("Nor is reconsideration to be used to ask the Court to rethink what it has already thought.").

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration serves "a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hefelbower v. U.S. Bank Nat'l Ass'n*, Case No. CV F 13-1121-LJO-MJS, 2013 WL 4647963, at *2 (E.D. Cal. Aug. 29, 2013), *quoting Publisher's Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Under this Court's Local Rule 230(j), a motion for reconsideration must describe "what new or different facts or circumstances are claimed to exist which did not

exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion."

## IV. DISCUSSION

### A. Plaintiffs' Standing to Pursue the Claims

Defendant asks the Court to reconsider its finding that Plaintiff Sarah Windsor possessed standing to pursue her claims. No new or different facts or circumstances are posed; rather, Defendant clarifies the argument posed in its original opposition briefing and asserts that Windsor's credibility is at issue. Specifically, Defendant contends that the declaration of Mark Rowney, the general manager of the facility, created a dispute of fact as to the plausibility of Windsor's claims because it demonstrated that the environmental harms Windsor observed could not be traced to the Facility's discharges.

The Court need not consider a simple re-argument of the same facts leveled in Defendant's opposition to the Motion for Partial Summary Judgment. *American Ironworks & Erectors, Inc. v. N. American Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) ("Because North American and Federal simply reargued their case and offered no basis for withdrawal of the October 19, 1998 order, the district court did not abuse its discretion in denying the motion."); *see also Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) ("a Rule 59(e) motion is not to be used to 'rehash' previously rejected arguments."). The Court determined in the Order re: Motion for Partial Summary Judgment that Windsor need not show that the environmental harms alleged were scientifically traceable to the Facility's discharges to show standing. (Order re: Motion for Partial Summary Judgment 11:5-14:2, ECF No. 51 ("The mere fact that Windsor cannot explain in a deposition the precise science linking the discharge of DCBM and copper to environmental harm does not mean that she lacks standing to pursue a claim under the Clean Water Act.").)

Defendant's argument in the current motion is substantially identical to the argument it made in opposition to the Motion for Partial Summary Judgment. (*Compare* Motion for Reconsideration 12:14-16, ECF No. 55 ("DCBM in the concentrations discharged by the MPUD does not emit any odor that could be characterized as anything that 'smells like sewage', as Windsor claims") *with* Opposition to Motion for Partial Summary Judgment 15:6-8, ECF No. 43

("There is simply no credible basis on which to claim that discharges of DCBM will cause nay odor of the type which Ms. Windsor complains of").) The Court previously determined that Plaintiff had demonstrated standing because she lived in close proximity to the creek, enjoyed the use of the creek, and had curtailed her activities with the creek because of her understanding of the discharged pollutants. Mere disagreement with this decision is not a basis for reconsideration.

**B. The Rowney Declaration as Extrinsic Evidence Interpreting the TSOs**

Defendant requests the Court reconsider its finding that the terms of the 2007 and 2014 Permits are clear and unambiguous and that extrinsic evidence of their intent (in the form of the Rowney Declaration) is thus unnecessary. Essentially, Defendant argues that the Court's interpretation of the terms of the Permits constituted clear error because the TSOs must be read as amendments to the Permits. Thus, Defendant argues, the TSOs modified the final effluent limitations that the Facility was required to meet. Because the Court has found that the interim effluent limitations in the TSOs did not modify the final effluent limitations in the Permits for the purposes of Plaintiffs' claims, Defendant contends that the Court committed clear error.[1]

As with the standing issue, Defendant does not offer new facts or a change in the law to justify reconsideration. And, as with the standing issue, Defendant largely re-argues the same arguments as it did in opposing the Motion for Partial Summary Judgment (and in its two prior motions to dismiss). In fact, portions of the Motion for Reconsideration appear to have been copied verbatim from the Opposition to the Motion for Partial Summary Judgment. (*Compare* Motion for Reconsideration 19:6-13, ECF No. 55 ("At least one California Court of Appeal has held that a 'compliance schedule' setting 'interim limitations' for a specific pollutant validly changed the limitations set by a permit adopted four years previously, in full compliance with the CWA") *with* Opposition to Motion for Partial Summary Judgment 17:26-18:8, ECF No. 43 ("At least one California Court of Appeal has held that a 'compliance' schedule setting 'interim limitations' for a specific pollutant validly changed the limitations set by a permit adopted four

---

[1] The Court previously found that the TSOs did not modify the final effluent limitations in the Permits in its Order re: Defendant Mariposa Public Utilities District's Motion to Dismiss (14:7-17:24, ECF No. 6) on September 24, 2015. The Court assumes, however, that the current Motion for Reconsideration is targeted only at the Order re: Motion for Partial Summary Judgment (ECF No. 51).

years previously, all in full compliance with the CWA").) Defendant has not demonstrated that it is entitled to reconsideration. *American Ironworks & Erectors, Inc.*, 248 F.3d at 899.

**C. The Settlement Agreement with the Regional Water Board as "Diligent Prosecution"**

In the Motion for Reconsideration, Defendant renews the argument from its first motion to dismiss (ECF No. 6) that the Regional Water Board is currently engaged in "diligent prosecution" against Defendant for the same violations alleged by Plaintiffs. Defendant also made this argument in its opposition to the Motion for Partial Summary Judgment. As the Court explained in the Order on that motion:

> Finally, the District argues that the Regional Water Board has recently provided notice of a proposed settlement agreement that would cover some of the violations that Plaintiffs allege. This appears to be a renewal of the argument Defendant made in its first motion to dismiss (ECF No. 6), asserting that that the Court lacks subject matter jurisdiction to adjudicate a citizen suit under the Clean Water Act because the Regional Water Board is diligently prosecuting an action against the District for some of the same violations. The Court previously rejected this argument in its order denying the first motion to dismiss. (ECF No. 22.) The Court then declined to revisit that decision in its order denying the second motion to dismiss. (ECF No. 31.) Defendant believes that the outcome of this argument is different this time, however, because the Regional Water Board has now proposed a settlement agreement with the District. The agreement, if executed by both parties and pending a 30 day public comment period, would impose $93,000 in penalties, but would allow the District to pay those penalties by spending that amount towards an assigned compliance project. (Rowney Decl., Exh. F., ¶ 5, ECF No. 45-2 ("In lieu of assessing all of the [penalties], the Parties agree to allow the Discharger to spend an equivalent amount towards the successful completion of a Compliance Project").)
>
> Nothing about these facts alters the Court's previous analysis. *Citizens for a Better Environment-California v. Union Oil Co. of California*, 83 F.3d 1111, 1116 (9th Cir. 1996) (settlement payments made in the context of "a settlement made to avoid an enforcement action by the Regional Board" not construed as "diligent prosecution"); *Wash. Pub. Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir. 1993) (order requiring discharger to make physical improvements or face sanctions not diligent prosecution); *N. Cal. River Watch v. Sonoma Cnty. Water Agency*, No. C 97-4263 CRB, 1998 WL 886645, at *3 (N.D. Cal. Dec. 16, 1998) ("a settlement agreement or a cease and desist order issued by the state is not sufficient to constitute diligent prosecution under a comparable state law."). Moreover, the bar for diligent prosecution "is assessed at the time the citizen-suit complaint is filed," it is not continuously re-evaluated over the course of the case. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 877 (9th Cir. 2013), *citing Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514, 516 (9th Cir. 1996). As discussed in the Court's order on the second motion to dismiss (ECF No. 31), the settlement agreement may impact the amount of penalties assessed in this litigation. It does not, however, create a triable issue of material fact with respect to liability.

(Order re: Motion for Partial Summary Judgment 22:20-23:25, ECF No. 51.)

Defendant introduces new evidence in the form of a fully-executed version of the settlement agreement originally proffered in opposition to the Motion for Partial Summary Judgment. Based on this agreement, Defendant contends, the Regional Water Board is now "diligently prosecuting" an action against Defendant and the entire action should be dismissed. As explained before, however, "diligent prosecution" is examined as of the time a complaint is filed. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 877 (9th Cir. 2013) ("whether a state's enforcement action meets the statute's requirements is assessed as of the time the citizen-suit complaint is filed."), *citing Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514, 516 (9th Cir. 1996) ("it cannot be said that the state was diligently prosecuting an action ***at the time Knee Deep filed its citizen suit***.") (emphasis added). As the Court has emphasized, the fact that Defendant has entered into a settlement agreement concerning at least some of the alleged violations may well affect the amount of civil penalties to be assessed. (Order re: Motion for Partial Summary Judgment 23:23-25, ECF No. 51; Order re: Second Motion to Dismiss 8:5-9:9, ECF No. 31.) It does not, however, create a mechanism for dismissal of the entire case. This conclusion is entirely consistent with the case law Defendant cites asserting that "post complaint events may moot claims for penalties." (Motion for Reconsideration 24:4-5, ECF No. 55; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 193 (2000) ("federal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.").

Defendant also contends that the execution of the settlement agreement precludes a citizen suit under 33 U.S.C. § 1319(g)(6)(A)(iii), which precludes a citizen suit for violations for which "the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or under comparable State law." The Court has previously determined that the preparation of plans or physical improvements to bring a facility into compliance do not constitute "an administrative penalty under section 1319(g)." *Wash. Pub. Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883, 885 (9th Cir. 1993). If such requirements do not constitute a "penalty" for the purposes of §1319(g)(6)(A)(ii), the Court sees

no reason why they would constitute a "penalty" for the purposes of § 1319(g)(6)(A)(iii).[2] The fact that the settlement agreement has finally been executed by the parties (rather than merely proposed, as it was at the time the Order re: Motion for Partial Summary Judgment was decided) does not justify reconsideration.

**D. Request for Additional Discovery**

Defendant contends that the Court committed clear error in granting partial summary judgment over its request to conduct additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure. In a declaration submitted in support of its opposition, defense counsel stated that he intended to pursue additional discovery into: (1) the identities of individual members of Plaintiff Friends of Mariposa Creek; and (2) the Regional Water Board's interpretation of the TSOs. (ECF No. 46.)

Rule 56(d) provides that: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "The party opposing summary judgment bears the burden of showing 'what facts she hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015, 1017-18 (9th Cir. 1991), *quoting Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n. 1 (9th Cir. 1986). "The party seeking additional discovery also bears the burden of showing that the evidence sought exists." *Id.*

"A party may not forestall an unfavorable ruling on a summary judgment motion merely by alleging fraudulent and/or conspiratorial conduct." *Volk v. D.A. Davidson & Co.*, 816 F.2d

[2] The Court is concerned, however, that Defendant appears to believe that this finding precludes it from introducing evidence of resources invested in improvement projects in its defense in this case. (Reply in Support of Motion for Reconsideration 13:6-16, ECF No. 63 ("The court's order granting partial summary judgment is manifestly unjust because it precludes Defendant from presenting any evidence in opposition to Plaintiff's claims since the court's conclusion that a settlement agreement can never constitute diligent prosecution renders the issue absolutely irrelevant.").) Even if Defendant's investments in an improvement project are inadequate to constitute a "penalty" and thus justify dismissal of the case, they are highly relevant in determining the amount of civil penalties to be assessed. 33 U.S.C. § 1319(d) ("In determining the amount of a civil penalty the court shall consider . . . any good-faith efforts to comply with the applicable requirements."). Nothing in the Court's orders should be read to preclude the introduction of such evidence during the penalty phase of this case.

1406, 1416 (9th Cir. 1987). Courts should deny a request for additional discovery "where the moving party's evidence affirmatively negates the factual issues which the opposing party claims remain controverted." *Id.*, *citing Exxon Corp. v. Federal Trade Comm'n*, 663 F.2d 120 (D.C. Cir. 1980); *Steele v. Extendicare Health Servs., Inc.*, 607 F.Supp.2d 1226, 1234 (W.D. Wash. 2009) (denying request for continuance where the discovery sought "is irrelevant to . . . Plaintiffs' [ ] claim"). "District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion." *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002), *quoting Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

As explained in the Order re: Partial Summary Judgment, further discovery regarding the Regional Water Board's interpretation(s) of the TSOs would not be helpful in interpreting the 2007 and 2014 Permits:

> Nothing in the TSOs indicate that they were intended to supplant or replace the Permits or the final effluent limitations indicated in the Permits. Rather, the TSOs make clear that the interim effluent limitations are merely setting a compliance schedule to bring the Facility into compliance with the final effluent limitations. The TSOs also discuss the fact that the implementation of the TSOs freed the Regional Water Board from a mandatory obligation to impose penalties for the Facility's violations. Nothing in the plain language of these documents indicates that they are permits. On the contrary, they repeatedly refer in a distinguishing way to the final limitations in the actual permits. Further discovery is not necessary to ascertain the objective intent of the Regional Water Board in light of the unambiguous language.

(Order re: Plaintiffs' Motion for Partial Summary Judgment 18:16-25, ECF No. 51.)

At no point does Defendant demonstrate that the discovery sought from the Regional Water Board would make a substantial difference in the outcome of the Motion for Partial Summary Judgment. The Court has addressed, at length, Defendant's contention that evidence beyond the clear and unambiguous terms of the Permits is necessary to interpret the Permits. (Order re: Defendant Mariposa Public Utilities District's Motion to Dismiss 14:7-17:24, ECF No. 22; Order re: Defendant Mariposa Public Utilities District's Second Motion to Dismiss 7:12-27, ECF No. 31; Order re: Partial Summary Judgment 15:1-20:3, ECF No. 51.)

Each time, the Court has read the express terms of the TSOs to be distinguishable from those in the Permits: the 2007 and 2014 Permits are "permits" as defined by the Clean Water Act

and the TSOs are not. The Court also determined that the terms of the 2007 and 2014 Permits were clear and unambiguous. Because the determination of liability in the Motion for Partial Summary Judgment was contingent solely on the final effluent limitations as set by the express terms of those Permits, evidence of the Regional Water Board's understanding of the TSOs was not "essential" to Defendant's opposition, nor would it have introduced a dispute over a material fact.

Likewise, Defendant does not show that the proposed discovery into the Friends of Mariposa Creek would have made a difference. In the declaration in opposition to the Motion for Partial Summary Judgment, defense counsel speculated that Plaintiff Sarah Windsor's statements about the Friends of Mariposa Creek were "fabricated." (Declaration of Neal E. Constanzo in Opposition to Motion for Summary Judgment ¶ 4 ("I suspect that Ms. Windsor is not being completely truthful about the existence or the membership composition of Friends of Mariposa Creek.")) As explained above, however, a mere allegation of fraudulent conduct is inadequate to demonstrate a need for additional discovery. *Volk*, 816 F.2d at 1416; *Joseph v. Amazon.com, Inc.*, 46 F.Supp.3d 1095, 1109-10 (W.D. Wash. 2014) ("'Wild speculation' about facts that may be learned in discovery is not sufficient"), *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998).

Even if Windsor had lied about the composition of the Friends of Mariposa Creek (and the mere fact that Plaintiffs objected to deposition questions on the basis of privacy is not evidence that she did), however, the Court would still find that Plaintiffs possessed standing because it found that Windsor herself had standing to pursue these claims. *Legal Aid Soc. of Alameda Cnty. v. Brennan*, 608 F.2d 1319, 1334 (9th Cir. 1979) ("it is unnecessary to examine the standing of all appellees so long as one had standing to secure the requested relief."); *League of Women Voters of Cal. v. F.C.C.*, 547 F.Supp. 379, 383 (C.D. Cal. 1982) ("Under these circumstances, it is not necessary at this time to consider separately the question of whether the League and/or Waxman would have standing to maintain this action absent Pacifica."). Defendant did not demonstrate that this discovery would raise a material issue of fact. The Court did not commit any clear error in declining Defendant's request to conduct additional discovery.

///

**E. Request for Appellate Review**

***1. Rule 54(b) certification.***

"Federal courts of appeals have jurisdiction over only appeals from 'final decisions' of federal district courts." *Nuwintore v. U.S.*, Case No. 1:13-cv-0967-AWI-JLT, 2014 WL 7335215, at *1 (E.D. Cal. Dec. 19, 2014), *quoting* 28 U.S.C. § 1291. "Ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." *Id.*, *quoting Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999); *see also Jones v. McDaniel*, 717 F.3d 1062, 1068 (9th Cir. 2013) ("Orders granting partial summary judgment 'are not final appealable orders.'"). Under Rule 54(b) of the Federal Rules of Civil Procedure, however, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."[3] Fed. R. Civ. P. 54(b); *McDaniel*, 717 F.3d at 1068 ("parties ordinarily must obtain Rule 54(b) certification in order to appeal partial summary judgments.").

Rule 54(b) exists "to mitigate the danger of hardship resulting from a delay of appeal until the whole action is concluded and to enable a party to file an appeal sooner than would otherwise be available by waiting for a final judgment on all claims against all parties in the lawsuit." *Stewart v. Gates*, 277 F.R.D. 33, 35-36 (D.D.C. 2011), *citing Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950).

If, for instance, a plaintiff sued multiple defendants and one of the defendants was successful in obtaining dismissal from the case, the plaintiff would ordinarily only be able to appeal that dismissal once final judgment was entered with respect to *all* defendants. In such a case, a considerable amount of time would pass before the plaintiff could appeal the dismissal.

---

[3] Rule 54(b) provides that:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Rule 54(b) exists to reduce or remove that delay, particularly where the facts or issues involved in the dismissal are independent of the claims against the other defendants. *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 805 n. 2 (D.C.Cir. 2010) (Although the text of Rule 54(b) does not distinguish between plaintiffs and defendants, the "motivation behind the amendment was to provide plaintiffs a way to appeal the dismissal of a defendant in a multiple defendant action, not necessarily their own dismissal from a multiple plaintiff case."); Fed.R.Civ.P. 54(b) Advisory Committee Note (1961) (explaining purpose of amendment adding explicit reference to applicability of Rule 54(b) to partial judgment as to some but not all parties: "The danger of hardship through delay of appeal until the whole action is concluded may be at least as serious in the multiple parties situations as in the multiple claims cases.").

The U.S. Supreme Court has laid out the steps a district court should follow in certifying a case under Rule 54(b):

> Nearly a quarter of a century ago, in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), this Court outlined the steps to be followed in making determinations under Rule 54(b). A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." 351 U.S., at 436, 76 S.Ct., at 900.
>
> Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." *Id.*, at 435, 76 S.Ct. at 899. It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. *Ibid.* This discretion is to be exercised "in the interest of sound judicial administration." *Id.*, at 437, 76 S.Ct., at 900 .
>
> Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." *Id.*, at 438, 76 S.Ct. at 901. It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).

The grant of a motion for partial summary judgment as to the issue of liability on the sole claim in a case, without an award of remedies, is not "final" under this analysis. In *Liberty Mutual Insurance Company v. Wetzel*, 424 U.S. 737 (1976), plaintiffs moved for partial summary judgment as to the issue of liability in an employment discrimination case. The plaintiffs prevailed on that motion, but had not yet received judgment regarding their requested remedies. *Id.* at 742 ("respondents, although having received a favorable ruling on the issue of petitioner's liability to them, received none of the relief which they expressly prayed for."). On a motion for reconsideration, the district court withheld the issuance of any injunctive relief and certified the order for immediate appeal under Rule 54(b). *Id.* at 741. The Third Circuit Court of Appeals found it had jurisdiction because the district court had certified the order under Rule 54(b), but the Supreme Court ultimately rejected this conclusion. *Id.* at 742 ("The District Court and the Court of Appeals apparently took the view that because the District Court made the recital required by Fed. Rule Civ. Proc. 54(b) that final judgment be entered on the issue of liability, and that there was no just reason for delay, the orders thereby became appealable as a final decision pursuant to 28 U.S.C. § 1291. We cannot agree with this application of the Rule and statute in question.").

Rather, the Supreme Court found that "Rule 54(b) 'does not apply to a single claim action . . . It is limited expressly to multiple claims actions in which 'one or more but less than all' of the multiple claims have been finally decided and are found otherwise to be ready for appeal.'" *Id.* at 743, *quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). Despite the fact that there were multiple plaintiffs, the "complaint advanced a single legal theory which was applied to only one set of facts." *Id.* Thus, it was construed as a "single claim" action and disqualified from certification under Rule 54(b). *Id.*

As Plaintiffs point out, the present action is a single claim action: Plaintiffs only seek relief under one theory and statute against one defendant. Nor is it "an ultimate disposition of an individual claim entered in the course of a multiple claims action," as required by *Curtiss-Wright* because it does not "dispose" of Plaintiffs' claim—remedies have yet to be determined. It thus does not qualify for rule 54(b) certification.

Even if the Court found finality in its decision, the intent behind Rule 54(b) precludes immediate appeal. As discussed above, many facts that Defendants have raised in the liability phase of the case will have great relevance in the penalties phase. Were the Court to certify the case for appeal at this juncture, the Court of Appeals could easily be forced to hear multiple cases based on the same set of facts (*i.e.*, once now and once again after the penalties phase is complete). This is precisely the scenario that the Court is tasked with preventing in the Rule 54(b) analysis. *McIntyre v. United States*, 789 F.2d 1408, 1410 (9th Cir.1986) ("We particularly scrutinize a district judge's rule 54(b) certification ... to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'"), *quoting Curtiss–Wright*, 446 U.S. at 10; *Buenaventura v. Champion Drywall, Inc. of Nev.*, Case No. 2:10-cv-00377-LDG, 2012 WL 3315055, at *2 (D. Nev. Aug. 10, 2012) ("Since the claims against the General Contractors arise from the same core set of operative facts as those brought against the other defendants, the Court is concerned that if it were to grant the Motion for Final Judgment, a 'piecemeal appeals' process would ensue, forcing the Court of Appeals to hear, potentially, multiple cases based on the same set of facts.").

Nor would a failure to certify this case for immediate appeal force undue delay on Defendant—the trial on the penalties phase is currently set for February 14, 2017, which would allow Defendant to appeal any final entry of judgment less than nine months from now. To certify an appeal at this juncture in the case would contravene the purpose of Rule 54(b): there is little risk involved in requiring Defendant to wait until after final entry to judgment to appeal, but great risk to the interests of judicial administration in permitting Defendant to appeal prematurely. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005) ("Because Wood's case is itself routine and partial adjudication of one of several related claims or issues is likewise routine, granting her Rule 54(b) request does not comport with the interests of sound judicial administration."). Certification under Rule 54(b) is denied.

***2. Immediate appeal under 28 U.S.C. § 1292(b).***

As explained above, an appellate court will "not review a district court ruling until after entry of a final judgment." *Kowalski v. Anova Food, LLC*, 958 F.Supp.2d 1147, 1154 (D. Haw.

2013), *citing Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978). Under 28 U.S.C. § 1292(b), however, a district court may grant permission for a party to make an immediate appeal of an order. Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

To certify a case for immediate appeal under § 1292(b), a court must find: "(1) that there [is] a controlling question of law, (2) that there [are] substantial grounds for a difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Lit. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1982). A question of law is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.* "A party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference'; the proponent of an appeal must make some greater showing." *Kowalski*, 958 F.Supp.2d at 1154.

The intent behind § 1292(b) was that it "was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement*, 673 F.2d at 10226. "It was not intended merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) ("It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate."). A dispositive question in protracted antitrust litigation, for example, might qualify for immediate appeal, while a merely "uncertain question of law" in "unexceptional contract litigation" would not. *Id.*

The issues decided in the Order re: Motion for Partial Summary Judgment qualify as "controlling questions of law" for the purposes of this case—the resolution of Defendant's

liability in this case would indisputably have a material effect on the outcome of this litigation. The Court does not agree, however, that there are "substantial grounds for a difference of opinion" on the issues raised in the Order. Defendant cites, in particular, interpretation of an NPDES Permit and "diligent prosecution" under the Clean Water Act as issues for which there is no guidance. But the Court (and the parties) have found ample Ninth Circuit authority regarding both of these issues. *See, e.g.*, *NRDC v. Cnty of L.A.*, 725 F.3d 1194, 1204-1205 (9th Cir. 2013) ("If the language of a permit, considered in light of the structure of the permit as a whole, 'is plain and capable of legal construction, the language alone must determine the permit's meaning.'"); *Citizens for a Better Environment-California v. Union Oil Co. of California*, 83 F.3d 1111, 1116 (9th Cir. 1996) (payments made as part of "a settlement made to avoid an enforcement action by the Regional Board" not "diligent prosecution" under the Clean Water Act). These are, admittedly, difficult issues. And it is evident that Defendant has a strong difference of opinion with both the Court's ruling and its interpretation of these cases. But neither of these facts creates the exceptional circumstances required to justify immediate appeal. *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, Case No. C 01-2821, 2004 WL 838160, at *4 (N.D. Cal. April 19, 2004) (finding that multiple dispositive issues in multiparty Clean Water Act case "presented difficult questions," but did not render case "exceptional or extraordinary" enough to qualify for immediate appeal under § 1292(b)).

Nor would immediate appeal "materially advance the ultimate termination of the litigation." As noted above, trial on the penalties phase of the litigation is currently set for February 2017.[4] Were the Court to grant immediate appeal, the case would be unable to proceed pending the outcome of that appeal. And, even if there were no delays, it is highly unlikely that a decision and mandate would be issued by an appellate court before February 2017.[5] Depending on the outcome of that decision, the case could continue on even beyond the decision's issuance.

---

[4] The Court notes that this date was selected based on Defendant's stated unavailability for earlier dates proposed by Plaintiffs, which would have brought the case to final judgment (and allowed Defendant to file a notice of appeal) earlier.

[5] *See United States Courts for the Ninth Circuit – Frequently Asked Questions*, https://www.ca9.uscourts.gov/content/faq.php (last visited July 1, 2016) ("How long does it take from the time of the notice of appeal until oral argument? For a civil appeal, approximately 12-20 months from the notice of appeal date. If briefing isn't delayed, approximately 9-12 months from completion of briefing.").

Immediate appeal is not justified under these circumstances. *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (immediate appeal does not "materially advance the ultimate termination of the litigation" where the appeal may not be completed before a currently scheduled trial date).

**V. ORDER**

For the reasons set forth above, Defendant's Motion for Reconsideration or Certification for Immediate Appeal (ECF No. 54) is DENIED.

IT IS SO ORDERED.

Dated: **July 5, 2016**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE